**BEFORE THE UNITED STATES JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION**

---

**In re: Generac Solar Power System
Marketing, Sales Practices and
Products Liability Litigation**

**MDL No. _____**

---

**BRIEF IN SUPPORT OF PLAINTIFF DUSTIN MOON'S MOTION FOR TRANSFER
OF ACTIONS TO THE NORTHERN DISTRICT OF CALIFORNIA PURSUANT TO
28 U.S.C. § 1407 FOR COORDINATED OR CONSOLIDATED
<u>PRETRIAL PROCEEDINGS</u>**

# TABLE OF CONTENTS

Page

I.     INTRODUCTION ...........................................................................................................5

II.    LEGAL STANDARD.........................................................................................................7

III.   ARGUMENT .....................................................................................................................7

    A.    The Requirements for Consolidation and Transfer Under Section 1407 Are
         Satisfied.........................................................................................................................7

         1.   The Actions Involve Common Questions of Fact............................................8

         2.   Consolidating and Transferring These Cases Will Avoid Duplicative
             Discovery ..........................................................................................................9

         3.   Consolidating and Transferring This Litigation Will Avoid Inconsistent
             Pretrial Rulings and Conserve the Resources of the Parties, Counsel and
             Judiciary.........................................................................................................11

         4.   The Number of Actions Currently at Issue Supports Consolidation and
             Transfer ..........................................................................................................12

    B.    This Litigation Should Be Transferred to the Northern District of California
         Before the Honorable Charles R. Breyer ...........................................................13

VI.   CONCLUSION................................................................................................................19

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*In re Certainteed Corp. Roofing Shingle Prods. Liab. Litig.*,
474 F. Supp. 2d 1357 (J.P.M.L. 2007)......................................................................8

*In re JP Morgan Auction Rate Secs. Mktg. Litig.*,
717 F. Supp. 2d 1374 (J.P.M.L. 2010)....................................................................12

*In re Land Rover LR3 Tire Wear Prods. Liab. Litig.*,
598 F. Supp. 2d 1384 (J.P.M.L. 2009)......................................................................8

*In re: McKinsey & Company, Inc., National Prescription Opiate Consultant Litigation*, MDL No. 2996 ...............................................................................18

*In re Michelin N. Am., Inc.*,
536 F. Supp. 2d 1365 (J.P.M.L. 2008)..................................................................8,12

*Najarian v. Charlotte Russe, Inc. (In re Clarlotte Russe, Inc., FACTA Litig.)*,
505 F. Supp. 2d 1377 (J.P.M.L. 2007)................................................................11,12

*In re Navistar Maxxforce Engines Mktg., Sales Practices & Prods. Liab. Litig.*,
67 F. Supp. 3d 1382 (J.P.M.L. 2014)........................................................................9

*In re Panacryl Sutures Prods. Liab. Litig.*,
572 F. Supp. 2d 1375 (J.P.M.L. 2008)....................................................................11

*In re Plumbing Fixture Cases*,
298 F. Supp. 484 (J.P.M.L. 1968)). ..........................................................................6

*In re: Rail Freight Fuel Surcharge Antitrust Litig. (No. II)*,
437 F. Supp. 3d 1365 (J.P.M.L. 2020)......................................................................7

*In re United States Office of Pers. Mgmt. Data Sec. Breach Litig.*,
138 F. Supp. 3d 1379 (J.P.M.L. 2015)................................................................11,12

*In re: Volkswagen "Clean Diesel" Marketing, Sales, Practices, and Products Liability Litigation*, MDL No. 2672 ...............................................................18

*In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prods. Liab. Litig.*,
148 F. Supp. 3d 1367 (J.P.M.L. 2015)....................................................................18

*In re Wireless Tel. Replacement Prot. Programs Litig.*,
180 F. Supp. 2d 1381 (J.P.M.L. 2002)....................................................................12

<u>**TABLE OF AUTHORITIES, CONT.**</u>

**Statutes**

28 U.S.C. § 1407................................................................................................ *passim*

**Other Authorities**

Federal Rule of Civil Procedure 23 ............................................................................10

JPML Rules of Procedure Rule 6.2......................................................................5,6,19

§ Manual for Complex Litigation (Fourth) § 20.131 (2004) ........................................7

Pursuant to 28 U.S.C. § 1407 and Rule 6.2 of the Rules of Procedure of the United States Judicial Panel on Multidistrict Litigation (the "Panel"), Plaintiff Dustin Winter ("Plaintiff" or "Movant") respectfully submits this brief in support of his Motion for Transfer of Actions to the Northern District of California Pursuant to 28 U.S.C. § 1407 for Coordinated or Consolidated Pretrial Proceedings. Plaintiff seeks the transfer of all actions identified in the Schedule of Actions, as well as any actions subsequently filed against Defendants Generac Power Systems, Inc. and Generac Holdings, Inc. (hereinafter "Defendants" or "Generac") or affiliates thereof involving similar facts or claims ("Actions"), to a single district for all pre-trial proceedings. Movant can represent that the majority of plaintiffs in the litigation support consolidation and transfer.

Movant further requests that the Actions be transferred to the United States District Court for the Northern District of California before the Honorable Charles R. Breyer.

## I.   __INTRODUCTION__

This litigation involves a home solar power system defect that has caused homes to catch fire, poses dangers of electrocution and other physical harm, causes loss of residential power and energy production, and other economic and property damage. The systems, called the PWRcell system ("Systems" or "Solar Products"), are manufactured, marketed, sold, supplied, distributed, and warranted by Generac. The Systems operate in conjunction with home solar panels to provide, boost, regulate, convert, store, and monitor energy produced through solar panels. Each of the class action lawsuits at issue in this Motion allege that Generac's PWRcell system is defective.

The defect relates to a purported safety component for the PWRcell system, called SnapRS (Rapid Shutdown) devices. If working properly and according to the requirements of the National Electric Code ("NEC"), they prevent shock, electrocution, physical harm, equipment damage, and damage to property. However, rather than provide and enhance safety for the System and home, the Snap RS devices malfunction by becoming overactive, repeatedly turning off and on, causing

them to overheat, bubble, burn, and explode ("Defect").  The Systems are sold on a nationwide basis and have been installed throughout the country.

Pursuant to 28 U.S.C. § 1407 ("section 1407") and Rule 6.2 of the Rules of Procedure of the Judicial Panel on Multidistrict Litigation ("Rule 6.2"), Dustin Moon, Plaintiff in the case styled *Moon v. Generac Power Systems, Inc. and Generac Holdings, Inc.*, Case No. 5:22-cv-09183, United States District Court for the Northern District of California ("Movant"), respectfully moves the Panel for an Order transferring the five cases listed in the Schedule of Actions[1] filed concurrently herewith (the "Actions"), as well as any tag-along cases subsequently filed involving similar facts or claims, to the United States District Court for the Northern District of California before the Honorable Charles R. Breyer for consolidated pretrial proceedings.

Each of the five pending Actions, pending in four district courts, are consumer class cases involving the alleged Defect, and Movant anticipates that many additional cases will be filed. Plaintiffs in each of the Actions allege that Generac engaged in unlawful, deceptive, fraudulent, and unfair marketing, sales, and business practices and breached its express and implied warranties.  All of the Actions involve common allegations, common questions of fact, and are essentially in the same procedural posture, where motions to dismiss have not been decided.[2]  The cases are at stages in the proceedings that are ripe for coordination, consolidation, and transfer.

For the reasons discussed below, consolidation and transfer is appropriate and these and

---

[1]  The accompanying Schedule of Action references the following cases:  1) *Dustin Moon v. Generac Power Systems, Inc. and Generac Holdings, Inc.*, Case No. 5:22-cv-09183 (N.D. Cal.) ("*Moon*"); 2) *Kathryn Locatell v. Generac Power Systems, Inc. and Generac Holdings, Inc.*, Case No. 2:23-cv-00203-TLN-JDP (E.D. Cal.) ("*Locatell*"); 3) *Nicole Kibert Basler, Gail Amend, Violet Wheat, Michael Donley, Becky Herrington, Juan Leon, Barbara Quednau, Lisa Goeke, Kerri Vincent, Miles Fawcett, Christian Figueroa, Kevin Hemphill, Geoff Edwards, and Lori Morse v. Generac Power Systems, Inc.*, Case No. 2:22-cv-01386 (E.D. Wisc.) ("*Basler*"); 4) *Daniel Haak v. Generac Power Systems, Inc.*, Case No. 8:22-cv-02470-VMC-AEP (M.D. Fla.) ("*Haak*"); and 5) *John Dillon v. Generac Power Systems, Inc.*, Case No. 2:23-cv-00034 (E.D. Wisc.) ("*Dillon*").

[2]  Motions to dismiss have not yet been filed in *Locatell* or *Dillon*.  The *Dillon* case was recently consolidated with *Basler* pursuant to an unopposed intra-district consolidation motion.

subsequent Actions should be transferred to the Northern District of California before the Honorable Charles R. Breyer for pretrial purposes.

## II.   <u>LEGAL STANDARD</u>

Centralization under section 1407 is warranted when: (1) "civil actions involving one or more common questions of fact are pending in different districts"; and (2) it will serve "the convenience of parties and witnesses and [ ] promote the just and efficient conduct of such actions."  Section 1407.  The purpose of centralization is to "eliminate duplicative discovery, prevent inconsistent pretrial rulings, and conserve the resources of the parties, their counsel, and the judiciary."  *In re: Rail Freight Fuel Surcharge Antitrust Litig. (No. II)*, 437 F. Supp. 3d 1365, 1365 (J.P.M.L. 2020); *see also* Manual for Complex Litigation (Fourth) § 20.131 (2004) (citing *In re Plumbing Fixture Cases*, 298 F. Supp. 484 (J.P.M.L. 1968)).  Each of these factors favors consolidation and transfer of the Actions filed against Generac.

## III.   <u>ARGUMENT</u>

### A.   **The Requirements for Consolidation and Transfer Under Section 1407 Are Satisfied**

Pretrial transfer and consolidation under section 1407 is critical for achieving efficiencies and economy in this litigation, particularly before pleading challenges are decided and discovery is underway.  All of the Actions involve similar allegations and causes of action, and Movant anticipates that several additional cases are on the horizon.  Failure to consolidate and transfer these Actions to a single court for pretrial proceedings will result in inconsistent rulings, confusion, duplicative discovery, and unnecessarily waste the resources of the parties and courts.

Movant can represent that the majority of plaintiffs in the litigation support consolidation and transfer.  Seventeen of the eighteen named plaintiffs, constituting plaintiffs in four of the five Actions – *Moon*, *Locatell*, *Basler*, and *Dillon* – are in favor of centralizing this matter.

**1.    The Actions Involve Common Questions of Fact**

There is overwhelming factual overlap between the Actions at issue.  Each complaint alleges that the SnapRS components for Generac's PWRcell system are defective and that the Defect is characterized by a common malfunction:  they become overactive, repeatedly turn on and off, causing them to overheat, melt, and catch fire.  In each of the complaints, Plaintiffs contend that the Defect constitutes a safety risk and results in loss of power generation or power failure to consumers' homes.  Plaintiffs further contend that Generac concealed and/or failed to disclose the Defect from consumers and that Generac's misconduct caused economic damages, including as it relates to the cost of the System, cost to repair or replace the System and its components, damage to property, and energy failure or loss of energy production.  The Actions also assert the same or similar common law and statutory violations rooted in breach of express and implied warranty, fraud, misrepresentation, and/or unfair and deceptive business practices violations.  In addition, the Actions seek certification of similar classes or subclasses.  Every complaint is brought on behalf of a nationwide class and state-specific subclasses.

The Panel has consistently found that consumer class litigation involving common factual issues and asserting the same or similar causes of action concerning an alleged defective product are appropriate for consolidation and transfer pursuant to section 1407.  *See*, *e.g.*, *In re Michelin N. Am., Inc.*, 536 F. Supp. 2d 1365, 1365 (J.P.M.L. 2008) (granting section 1407 motion centralizing four putative class cases involving common questions of fact relating to defective "run-flat" tires and alleged damages in the form of costs of repair and replacement); *In re Land Rover LR3 Tire Wear Prods. Liab. Litig.*, 598 F. Supp. 2d 1384, 1385 (J.P.M.L. 2009) (centralizing cases involving common questions of fact involving alleged alignment defect); *In re Certainteed Corp. Roofing Shingle Prods. Liab. Litig.*, 474 F. Supp. 2d 1357, 1358 (J.P.M.L. 2007) (centralizing overlapping putative class cases involving common questions of fact based on

allegedly defective roofing shingles); *In re Navistar Maxxforce Engines Mktg., Sales Practices & Prods. Liab. Litig.*, 67 F. Supp. 3d 1382, 1383 (J.P.M.L. 2014) (centralizing putative class cases asserting claims for breach of express and implied warranties based in part on alleged defects in defendants' emission control system).

For these reasons, the common questions of fact across these Actions warrant centralization.

      **2.**      **Consolidating and Transferring These Cases Will Avoid Duplicative Discovery**

The common allegations, causes of action, and questions of fact referenced above will also elicit overlapping discovery issues. Similarly, where the Actions implicate nationwide and state-specific subclasses, they will all be subject to discovery propounded for (and against) class certification.

For instance, across the Actions, discovery will focus on issues such as:

- The alleged SnapRS Defect;

- The extent and nature of electronic data maintained by Generac to monitor the performance of its Solar Products;

- Generac's manufacture, design, marketing, sales, and distribution of its Solar Products;

- Whether and when Generac knew or should have known about the alleged Defect;

- Generac's concealment, nondisclosure, and/or misrepresentations concerning its Solar Products and alleged Defect;

- Safety hazards and concerns presented by the Defect;

- Numerosity, commonality, typicality, adequacy, predominance and superiority

pursuant to Federal Rule of Civil Procedure 23;

- Consumer complaints concerning Generac's Solar Products, including the SnapRS Defect;

- Investigations by governmental agencies concerning the alleged Defect and related safety hazards or concerns;

- Generac's warranty program;

- Internal testing, investigations, reports, memoranda, meetings, and communications regarding the alleged Defect;

- Communications with its authorized installers and repair network concerning the Defect, requested repairs, complaints, replacements, warranties, and repair or replacement costs;

- Communications with customers concerning the alleged Defect;

- Generac's design, manufacture, distribution, and performance of next-generation SnapRS units and/or software updates to address the alleged Defect;

- Solar energy disruption and failures that occur as a result of the Defect; and

- Generac's acquisition of companies that designed, developed, manufactured, and/or sold solar energy technologies and products that were involved in or integral to the development and operation of Generac's PWRcell system.

Plaintiffs across the Actions will likely request to depose the same witnesses in this litigation. Likewise, Generac will raise the same defenses, arguments against class certification, discovery objections, the same or similar protective orders, and assert the same privileges in each case. Failing to consolidate and transfer this litigation to a single district court for pretrial proceedings will engender inefficiency and require the parties, counsel, and courts to confront duplicative discovery issues and the same or similar discovery motions concerning those issues.

Consolidation and transfer is appropriate.

### 3. Consolidating and Transferring This Litigation Will Avoid Inconsistent Pretrial Rulings and Conserve the Resources of the Parties, Counsel and Judiciary

Centralization of this litigation is critical for coordinating pretrial proceedings and avoiding inconsistent rulings involving the same or similar questions of fact and law, as well as procedural questions concerning class certification. *See*, *e.g.*, *Najarian v. Charlotte Russe, Inc. (In re Clarlotte Russe, Inc., FACTA Litig.)*, 505 F. Supp. 2d 1377, 1378 (J.P.M.L. 2007) (coordinating and transferring two actions and finding that "[c]entralization under Section 1407 will . . . prevent inconsistent pretrial rulings, especially with respect to class certification"); *see also In re United States Office of Pers. Mgmt. Data Sec. Breach Litig.*, 138 F. Supp. 3d 1379, 1380 (J.P.M.L. 2015) (granting transfer motion in litigation consisting of three cases and finding that "[c]entralization will . . . prevent inconsistent pretrial rulings on class certification and other issues").

Here, each of the Actions are putative class cases and involve the same or similar questions of law and fact. The likelihood of inconsistent rulings on pretrial motions in these and subsequent related cases significantly increases without consolidation and transfer to a single court. For example, Plaintiff anticipates pleading challenges in the form of motions to dismiss, motions to resolve discovery disputes, summary judgment motions, and motions for class certification in each of the cases. Inconsistent rulings by different courts on the pleadings as well as dispositive, discovery, and procedural motions would create confusion and conflict throughout the litigation on issues that are otherwise overlapping and duplicative.

For similar reasons, consolidating this litigation and transferring it to a single court will "conserve the resources of the parties, their counsel, and the judiciary." *In re the United States Office of Pers. Mgmt. Data Sec. Breach Litig.*, 138 F. Supp. 3d at 1380; *see also In re Panacryl Sutures Prods. Liab. Litig.*, 572 F. Supp. 2d 1375, 1376 (J.P.M.L. 2008) (same). Centralization

and early organization will promote judicial efficiency and economy by allowing parties to brief core factual, legal, discovery and procedural issues that apply across the litigation.  In addition, because each of the cases in this litigation arise from the same alleged conduct and implicate the same or similar issues, Generac's anticipated defenses will raise consistent challenges that can and should be efficiently managed and decided by a single court.  Accordingly, centralization and transfer will avoid inconsistencies and promote efficiencies across these Actions.

### 4.     The Number of Actions Currently at Issue Supports Consolidation and Transfer

There are currently five class action cases pending against Generac related to its allegedly defective PWRcell system and SnapRS components.  Movant believes that additional class cases will soon be filed on behalf of Generac consumers in federal courts across the United States.

The Panel has granted section 1407 motions to consolidate and transfer litigation consisting of five and even fewer cases.  *See*, *e.g.*, *Najarian v. Charlotte Russe, Inc. (In re Clarlotte Russe, Inc., FACTA Litig.)*, 505 F. Supp. 2d at 1377 (coordinating and transferring two actions); *In re Michelin N. Am., Inc.*, 536 F. Supp. 2d at 1365 (consolidating and transferring four cases involving allegedly defective tire product); *In re United States Office of Pers. Mgmt. Data Sec. Breach Litig.*, 138 F. Supp. 3d at 1379 (consolidating and transferring three cases); *In re Wireless Tel. Replacement Prot. Programs Litig.*, 180 F. Supp. 2d 1381, 1382 (J.P.M.L. 2002) (consolidating three consumer protection cases); *In re JP Morgan Auction Rate Secs. Mktg. Litig.*, 717 F. Supp. 2d 1374, 1375 (J.P.M.L. 2010) (consolidating and transferring five actions to a single district court).  The result should be no different here.

For these reasons, and where additional tag-along actions related to the alleged Defect are likely to be filed, consolidation and transfer is appropriate.

**B.      This Litigation Should Be Transferred to the Northern District of California Before the Honorable Charles R. Breyer**

The most appropriate district for transferring this litigation is the Northern District of California.  This district will promote the just and efficient conduct of the overall litigation and represents a geographic location that is readily accessible and highly relevant for the litigation, including for potential witnesses, experts, documents, Generac customers and installers, and its business activities dating back to its entry into the residential solar power market.

California is at the forefront of residential rooftop solar energy, with significant investments in solar energy production and technology and developing regulatory infrastructure to support and manage solar industry growth.  According to the Solar Energy Industries Association ("SEIA"), "the national trade association for the solar and solar + storage industries,"[3] California is *ranked 1st in the nation* for total installed solar capacity, enough solar installed to power 10,510,648 homes.[4]  California has 2,378 solar companies, including 386 manufacturers and 934 installers/developers.[5]  California *ranks first in installations* and "has the largest solar market in the U.S."[6]  By contrast, Florida and Wisconsin – the two other states where cases in this litigation are pending – are ranked 3rd and 23rd respectively for total installed solar capacity.  According to SEIA, "Florida's solar policies have lagged behind other states" and Wisconsin has enough solar installed to power only "182,187 homes."[7]

---

[3] (SEIA.org, *About SEIA*, at https://www.seia.org/about (last visited on Mar. 2, 2023).)

[4] (SEIA.org, *Where It's Happening, State-By-State Map, California*, at https://www.seia.org/state-solar-policy/california-solar (last visited on Mar. 2, 2023).)

[5] (*Id.*)

[6] (*Id.*)

[7] (SEIA.org, *Where It's Happening, State-By-State Map, Florida* and *Wisconsin*, at https://www.seia.org/state-solar-policy/florida-solar and https://www.seia.org/state-solar-policy/wisconsin-solar (last visited on Mar. 2, 2023).)

California's "solar rush" was in part prompted by its first-in-the-nation requirement that,

starting in 2020, all new home construction must be equipped with rooftop solar panels:

> In 2018, California created a mandate that new single-family homes and multi-family dwellings up to three stories high must install solar panels.  The California solar mandate took effect on January 1, 2020, and is part of California's building codes.  The mandate was created by the California Energy Commission ("CEC") . . . and is the first such mandate in the United States.[8]

It is no surprise that California is the hub of solar energy production and technology in the

nation.  This is readily apparent from the following graphics showing California solar companies

– including installers, manufacturers and other solar companies – and their significant

concentration in the San Francisco Bay Area, where the Northern District of California is located:



(SEIA.org, *Where It's Happening, State-By-State Map, California*, *Download the Factsheet*, *at*

---

[8]  (Greenlancer.com, *Blog*, *The California Solar Mandate: What It Is And What Solar Businesses Should Know*, dated Mar. 17, 2022, *at* https://www.greenlancer.com/post/california-solar-mandate (last visited on Mar. 2, 2023); *see also* SEIA.org, *Where It's Happening, State-By-State Map, California*, *at* https://www.seia.org/state-solar-policy/california-solar ("Beginning in 2020, all new homes built in California must have solar").)

https://www.seia.org/sites/default/files/2023-01/California.pdf (last visited on Mar. 2, 2023).)



(SEIA.org, *Where It's Happening, State-By-State Map, California*, *at* https://www.seia.org/state-solar-policy/california-solar.)  Indeed, Generac's network of residential solar power installers are located throughout the state.  (*See*, *e.g.*, https://solarbuildermag.com/energy-storage/generac-partners-with-a-leading-southern-california-solar-installer/ ("Generac partners with a leading Southern California solar installer"); https://www.sierrapacifichome.com/solar/storage-battery-energy/generac-pwrcell ("Genera PWRCELL Systems in Sacramento CA"); https://enlightenedsolar.com/generac-pwrcell-partner/ ("As a Generac PWRcell expert installer, our team at Enlightened Solar provides Generac installation and maintenance services for properties in Orange County, CA."), last visited on Mar. 2, 2023).)

Residential solar power has also become more prominent in California as catastrophic wildfires and sometimes days' long utility power outages have become more commonplace.

Generac has specifically recognized this issue:

> in California Public Safety Power Shutoff events have occurred whereby public utilities are turning off power supply to their customers under certain circumstances to prevent their transmission equipment from starting wildfires, which we anticipate may continue in the future.  Taken together, we expect these factors to continue driving increased awareness of the need for backup power and demand for Generac's products within multiple categories.

(*See*, *e.g.*, Generac Holdings, Inc. Form 10-K, at p. 6, filed on Dec. 31, 2022, *available at* https://investors.generac.com/static-files/8c798ee3-be57-443a-80f2-2afb258bb909.)  With that in mind, Generac specifically markets its PWRcell system and incentive programs to California consumers who face these power shutoffs.  (Generac.com, *Homeowners*, *Clean Energy*, *Free Home Backup Power System for Qualified California Homeowners*, *at* https://www.generac.com/for-homeowners/clean-energy/sgip-consumer, last visited on Mar. 2, 2023; *see also* Generac.com, *Homeowners, Clean Energy*, *Public Safety Power Shutoffs*, at https://www.generac.com/for-homeowners/clean-energy/prepare-for-public-safety-shutoffs, last visited on Mar. 2, 2023 ("'If you want to save money and be prepared, you have to get a Generac PWRcell system' [by] Ryan W. – California").

Generac entered into the solar market in part through California's burgeoning solar power industry and acquired West Coast companies to rapidly develop its solar energy system business. Generac's home solar business is the result of several recent acquisitions of existing solar technology companies that occurred from 2019 through 2021.  Generac has been in the solar business for *only four years*.  (*See*, *e.g.*, Generac Holdings, Inc. Form 10-K, at p. 3, filed on Dec. 31, 2022, *available at* https://investors.generac.com/static-files/8c798ee3-be57-443a-80f2-2afb258bb909 ("Generac has made significant investments in recent years to expand its capabilities into energy technology solutions, beginning with the March 2019 acquisition of Neurio Technology Inc.").)

Many of the cornerstone companies that Generac acquired to start and develop its solar

energy business have headquarters in California, British Columbia, Oregon, and Colorado.  Of

particular relevance are Generac's acquisitions of Neurio Technology Inc. (based in Vancouver)[9]

and Chilicon Power LLC (based in Los Angeles).[10]  Both of these companies are involved in the

process of monitoring and managing the performance and electricity production of Generac solar

energy systems purchased by consumers throughout the country.  Since the performance (and

malfunction) of these systems is at the center of this litigation, it is expected that significant

discovery will take place with respect to employees and documents located in California and

British Columbia.  Additionally, it is expected that significant discovery will occur with respect to

employees and documents maintained by the Bend, Oregon-based company, Apricity Code

Corporation.  Apricity is an engineering firm that was acquired by Generac in 2021 to help increase

the reliability and functionality of home solar systems sold by Generac.[11]  Another source of

discovery resides with Denver-based company Enbala Power Networks, Inc., which Generac

acquired in October 2020.  Generac describes Enbala as "one of the leading providers of distributed

---

[9] (Generac.com, *Investor Relations*, *Press Releases*, *Generac Announces Acquisition of Neurio Technology*, dated Mar. 13, 2019, *available at* https://investors.generac.com/news-releases/news-release-details/generac-announces-acquisition-neurio-technology-inc, last visited on Mar. 2, 2023 ("Neurio . . . [is] headquartered in Vancouver, British Columbia . . . Neurio's hardware and software solutions equip users with the intelligence to manage and control electrical loads, solar systems and batteries to optimize energy consumption and increase savings").)

[10] (Generac.com, *Investor Relations*, *Press Releases*, *Generac Enters Microinverter Market with Acquisition of Chilicon Power*, dated July 6, 2021, *available at* https://investors.generac.com/news-releases/news-release-details/generac-enters-microinverter-market-acquisition-chilicon-power, last visited on Mar. 2, 2023 ("California-based Chilicon's unique approach to power inversion and monitoring technology maximizes PV production, lowers installation costs, and allows for easy integration of a battery or a generator, providing tremendous flexibility for installers and end-users.").)

[11] (Generac.com, *Investor Relations*, *Press Releases*, *Generac Accelerates Clean Energy Developments with Acquisition of Apricity Code Corporation*, dated Sept. 1, 2021, *available at* https://investors.generac.com/news-releases/news-release-details/generac-accelerates-clean-energy-developments-acquisition, last visited on Mar. 2, 2023 ("Apricity . . . [is] an advanced engineering and product design company located in Bend, Oregon.  Apricity's advanced team of engineers is experienced in designing and prototyping energy-related products to increase reliability, add functionality, and improve performance . . . . 'Adding Apricity to the Generac team will accelerate [Generac's] our efforts to provide a broader energy technology portfolio and increase our speed to market for both our Clean Energy and Grid Services products and solutions'").)

energy optimization and control software."

Generac's acquisition of West Coast companies such as Neurio, Chilicon, and Enbala, has enabled it to "establish[ ] an important presence in the rapidly growing residential clean energy market, focused on solar, battery storage and grid services applications."[12]  All of these Generac-acquired entities are in close proximity to the Northern District of California.  California will be central for solar energy expertise in this litigation and discovery efforts relating to Generac's customers, installer network, and product design and development.

In addition, two of the five cases are currently pending in California, with one of them (*Moon*) presently before Judge Breyer in the Northern District of California.  These Actions should specifically be transferred to the Honorable Charles R. Breyer for pretrial proceedings.  Judge Breyer has been described by the Panel as a "jurist who is thoroughly familiar with the nuances of complex, multidistrict litigation by virtue of having presided over nine MDL dockets, some of which involved numerous international defendants. We are confident that Judge Breyer will steer this controversy on a prudent and expeditious course."  *In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prods. Liab. Litig.*, 148 F. Supp. 3d 1367, 1369-70 (J.P.M.L. 2015).  While Judge Breyer is listed as presiding over two MDLs – *In re: Volkswagen "Clean Diesel" Marketing, Sales, Practices, and Products Liability Litigation*, MDL No. 2672 ("*Volkswagen*") and *In re: McKinsey & Company, Inc., National Prescription Opiate Consultant Litigation*, MDL No. 2996 ("*McKinsey*") – *Volkswagen* is at or near its conclusion, and a settlement in principle has been reached for a substantial portion of claims pending in *McKinsey*.  *See* J. Status Rep. at 1, Case No. 21-md-2996, ECF No. 436 (N.D. Cal. Oct. 26, 2022).

---

[12] (*See*, *e.g.*, Generac Holdings, Inc. Form 10-K, at p. 3, filed on Dec. 31, 2022, *available at* https://investors.generac.com/static-files/8c798ee3-be57-443a-80f2-2afb258bb909, last viewed on Mar. 2, 2023).)

For the reasons described above, these Actions should be consolidated and transferred to the Northern District of California before the Honorable Charles R. Breyer.

IV.     <u>**CONCLUSION**</u>

For the foregoing reasons, Movant respectfully requests that the Panel consolidate these Actions pursuant to 28 U.S.C. § 1407 and Rule 6.2 of the Rules of Procedure of the Judicial Panel on Multidistrict Litigation.   Movant further requests that these Actions be transferred to the Northern District of California before the Honorable Charles R. Breyer for pretrial proceedings.

Dated:  March 3, 2023                                        Respectfully submitted,

**KERSHAW TALLEY BARLOW, PC**

By:     */s/ William A. Kershaw*
William A. Kershaw
Stuart C. Talley
Ian J. Barlow
401 Watt Avenue
Sacramento, California 95864
Telephone: (916) 779-7000
Email: bill@ktblegal.com
Email: stuart@ktblegal.com
Email: ian@ktblegal.com

*Attorneys for Movant/Plaintiff Dustin Moon*